UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10303-RWZ

ALAN URBON

v.

JPMORGAN CHASE BANK, N.A.

MEMORANDUM OF DECISION

March 18, 2013

ZOBEL, D.J.

Plaintiff Alan Urbon ("Urbon"), proceeding pro se, has sued defendant JPMorgan Chase Bank, N.A. ("Chase") over matters related to Urbon's home mortgage. Chase now moves for summary judgment.

**I. Background**

The facts are largely undisputed. In 2004, Urbon took out a $275,000 loan from Washington Mutual Bank, FA ("WaMu"), secured by a mortgage on his house. WaMu then sold that loan to a trust, but retained the right to service the loan. The assignment of the mortgage from WaMu to the trust was never registered.

Urbon became unable to make his mortgage payments and filed a Chapter 7 petition for bankruptcy on July 11, 2008. He claims that he was pressured by WaMu to

convert his Chapter 7 proceeding to a Chapter 13 proceeding. Urbon did subsequently move to convert his Chapter 7 proceeding to a Chapter 13 proceeding, which the bankruptcy court allowed on September 19, 2008.

Shortly thereafter, WaMu was placed under federal receivership and its assets were largely sold by the Federal Deposit Insurance Corporation ("FDIC") to Chase. The agreement between the FDIC and Chase specified that the FDIC would retain liability for any borrower claims against WaMu arising before September 25, 2008.

As successor in interest to WaMu, Chase filed a proof of claim and subsequently an amended proof of claim in Urbon's bankruptcy proceeding for the amount in arrears on Urbon's mortgage loan. Urbon did not object to those claims. He filed a Chapter 13 plan in October 2008 that provided for full repayment to Chase of the amount in arrears on his mortgage loan, a total of $10,337.98. That Chapter 13 plan was approved by the bankruptcy court in April 2009.

After his Chapter 13 plan was approved, Urbon applied to Chase for a modification of his mortgage loan. Urbon and Chase agreed on a modification in December 2010. Under that modification, the total outstanding arrears on Urbon's loan—which at that point totaled over $33,000—were capitalized and added to the outstanding principal from the original $275,000 loan. The new principal balance under the modification was $308,169.07.

Urbon continued to make payments on his Chapter 13 plan even after signing the modification agreement with Chase. Out of those payments, Urbon's Chapter 13 trustee forwarded payments of $155.38 to Chase every few months in order to pay off

Chase's Chapter 13 claim for amounts in arrears. But Chase had also capitalized those same amounts in arrears and added them to the new principal amount under Urbon's modification agreement. In effect, Urbon was paying off his arrears twice—once through the Chapter 13 plan, and once through his modified loan agreement. According to the present record, it appears that both sets of payments were properly applied to Urbon's mortgage loan. That is, Urbon was not losing money by making two sets of payments—he was just paying off his loan faster than he was required to.

Urbon made his first payment under the modified loan on March 28, 2011. He realized shortly thereafter that he was paying off his arrears through his Chapter 13 plan as well as through his modified loan agreement, and stopped making payments on his Chapter 13 plan. The bankruptcy court dismissed Urbon's Chapter 13 proceeding on July 25, 2011 for failure to make payments.

On the same day that he made his first payment under the modified loan agreement—March 28, 2011—Urbon sent a letter to Chase requesting certain information about his loan and its servicing. The letter describes itself as a qualified written request under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. It requests, inter alia, "[a] copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied" for the entire life of the loan. Docket # 5, Ex. A ("Letter"), at 1. Chase acknowledged receipt of the letter on March 31, 2011, but did not provide any of the requested information until December 2 of that year.

Urbon originally filed suit in the Land Court department of the Massachusetts

3

Trial Court, and Chase then removed the case to this court. The currently active complaint is Urbon's first amended complaint, filed March 5, 2012. It is divided into three counts: the first alleges that Chase violated RESPA by failing to respond in a timely fashion to Urbon's qualified written request, the second alleges that Chase filed a false claim in Urbon's Chapter 13 bankruptcy, and the third charges WaMu with failing to register the assignment of Urbon's mortgage. Chase now moves for summary judgment on all three counts.

## II. Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To defeat summary judgment, the nonmovant must produce admissible evidence sufficient to show the existence of all essential elements on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23. If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Anderson, 477 U.S. at 248.

## III. Analysis

The court will consider each count of Urbon's complaint in turn.

### A. Count 1

Under RESPA, a loan servicer must respond to any "qualified written request . . . for information relating to the servicing of [a] loan." 12 U.S.C. § 2605 (e)(1)(A). Chase

argues first that Urbon's letter was not a "qualified written request" because it did not seek information about servicing of his loan. That is plainly incorrect. RESPA defines the term "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Id. § 2605(i)(3). Urbon's letter requested, inter alia, "[a] copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied" for "the entire life of the loan." Letter at 1. At a bare minimum, then, Urbon requested information relating to the servicing of his loan by asking for a payment history showing the payments he had made and how they were applied. See Kassner v. Chase Home Finance, LLC, Civil Action No. 11-10643-RWZ, 2012 WL 260392, at *6 (D. Mass. Jan. 27, 2012) ("[P]laintiff's request for a copy of the loan's payment history clearly does relate to the servicing of the loan."). Urbon's letter was therefore a qualified written request to which Chase was required to respond. Because Chase did not respond until well after the sixty days allowed by the statute, see 12 U.S.C. § 2605(e)(2), Urbon has presented sufficient evidence to show that Chase violated RESPA.

However, Urbon cannot recover on this count because he has not presented any evidence showing damages. RESPA allows two types of damages: actual damages, or statutory damages "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(A)-(B). Urbon has not provided evidence of a pattern or practice of

5

noncompliance, so statutory damages are not available. As for actual damages, Urbon lists five concerns in his opposition:

(1) other parties may seek to enforce debt obligations against him;

(2) the title to his home has been clouded;

(3) he has been paying the wrong party;

(4) he is unable to determine whether he sent his monthly mortgage payments to the right party;

(5) the mortgage was sold before he signed the mortgage agreement.

But Urbon has not presented admissible evidence of damages on any of these grounds. As to the first concern Urbon lists, he has presented no evidence that any other party sought to enforce a debt obligation against him. His second and fifth concerns, regarding his mortgage and its securitization, are apparently unrelated to his qualified written request and Chase's delay in responding. Finally, the third and fourth concerns listed show no damages because it appears that all of Urbon's payments were properly applied to his mortgage loan.

Urbon's allegations also separately invoke pecuniary damages of $2,500 for an independent audit of his loan status and emotional damages. But he has not presented evidence showing that either type of damages was caused by Chase's RESPA violation rather than by his other mortgage-related difficulties. His claim cannot succeed without evidence of causation. See Okoye v. Bank of N.Y. Mellon, Civil Action No. 10-11563-DPW, 2011 WL 3269686, at *17-18 (D. Mass. July 28, 2011).[1]

---

[1] Likewise, his filing fee for bringing suit in land court is not a cognizable damage. Cf. Kassner, 2012 WL 260392, at *7 ("[A]ttorney's fees for bringing a RESPA suit are not actual damages under the

Urbon cites several other statutes in relation to Count 1, but none of them are applicable. First, he cites 15 U.S.C. § 1640(a) and 15 U.S.C. § 1641(f)(2). The former creates a private right of action to enforce the latter, which states (as relevant here): "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2). These provisions obviously do not relate to Urbon's claim that Chase responded late to his qualified written request. Moreover, Urbon has not submitted any evidence showing that these provisions were violated. There is no evidence in the record that Urbon requested from Chase the name, address, and telephone number of the owner of his obligation. He does not specifically seek that information in his qualified written request. In his opposition, he refers instead to a different letter that he sent to Chase on February 13, 2012 requesting the relevant information. But that letter is not mentioned in the amended complaint, and it does not appear in the record.

Urbon has submitted a response from Chase to his February 13, 2012 letter in which Chase states: "The investor for this loan is JPMorgan Chase Bank, N.A. 3415 Vision Drive, Columbus, OH 43219 (800) 848-9136." Docket # 26, Ex. 4. Urbon argues that if Chase is not in fact the owner of his obligation, then Chase violated 15 U.S.C. § 1641(f)(2) by providing this information. But the record evidence shows that Chase is in fact in possession of Urbon's note, even if a separate trust holds legal title to it. See Docket # 22, Ex. 2. Without evidence showing what information Urbon requested

---

statute.").

from Chase, there is no basis for concluding that Chase failed to respond to the best of its knowledge as required by 15 U.S.C. § 1641(f)(2).

Finally, Urbon cites Mass. Gen. Laws ch. 266, § 35A(b). That is a criminal provision, and does not create an express or implied private right of action. See Loffredo v. Ctr. for Addictive Behaviors, 689 N.E.2d 799, 802 (Mass. 1998) ("[W]e have generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference."). Therefore, even if Urbon could show that the statute he cites had been violated, he still cannot sue under that statute.

### B. Count 2

In Count 2, Urbon alleges that Chase filed a false claim in his Chapter 13 proceeding because the claim it filed stated that Chase was filing as servicer for Federal Home Loan Mortgage Corp. ("Freddie Mac"), rather than as servicer for the trust that actually owned the mortgage. This count must fail because Urbon did not object to Chase's claim in bankruptcy court, and the claim was allowed by the bankruptcy court's order. Urbon therefore cannot challenge Chase's claim in this collateral proceeding. See Adair v. Sherman, 230 F.3d 890, 894-95 (7th Cir. 2000); Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 528-31 (9th Cir. 1998). Urbon responds that he did not realize Chase's claim was false at the time; but it is simply too late to raise that challenge now.[2]

Urbon also discusses in Count 2 the fact that for a time he was paying off his

---

[2] The court notes that Urbon was represented by counsel during his bankruptcy proceeding.

arrears through both the Chapter 13 plan and the modification agreement. But Urbon has not shown evidence of any misconduct by Chase in that respect. If Urbon believed that his Chapter 13 plan needed to be modified, he should have requested that relief from the bankruptcy court. See 11 U.S.C. § 1329. In any case, Urbon has not presented any evidence of damages from the alleged error, since it appears that all of his payments were properly applied to his loan.[3]

Finally, Urbon cites 18 U.S.C. § 152 and Mass. Gen. Laws ch. 266, § 35A(b) as his grounds for relief on Count 2. As discussed above, Mass. Gen. Laws ch. 266, § 35A(b) is a criminal statute and does not provide a private right of action. The same is true of 18 U.S.C. § 152. Clayton v. Raleigh Fed. Sav. Bank, 107 F.3d 865 (4th Cir. 1997) (unpublished). Urbon therefore has not presented a cognizable claim under either statute, or under any other statute of which the court is aware.

### C. Count 3

Count 3 is based on WaMu's failure to register its assignment of the mortgage to the trust (or to any subsequent takers).[4] To the extent Urbon seeks damages from Chase for WaMu's failure to record the assignment, the claim fails because Chase did not assume from the FDIC any of WaMu's liability for claims by borrowers. See Docket # 22, Ex. 7, § 2.5; Yeomalakis v. FDIC, 562 F.3d 56, 60 (1st Cir. 2009). Urbon's claim

---

[3] Likewise, Urbon has not presented any evidence of the damages he claims from negative credit reporting and from mental anguish due to daily demands by unsecured creditors.

[4] Urbon insists in the amended complaint that his mortgage was subsequently assigned by the trust to Freddie Mac. His evidence supporting that assertion is tenuous at best; most of the exhibits he has filed show only that Freddie Mac was a guarantor on the certificates issued by the trust. Because Urbon's claims must fail in any case, the dispute is immaterial, and the court need not determine whether Urbon has presented enough evidence supporting his position to raise a triable issue of fact.

also fails because the statute requiring mortgage assignments to be registered, Mass. Gen. Laws ch. 185, § 67, does not create a private right of action. See Loffredo, 689 N.E.2d at 802.

Urbon cites a variety of other causes of action in Count 3, but none can provide relief. First, he seeks to void the mortgage by an action to quiet title or remove the cloud from his title. These causes of action fail because Urbon has not presented any evidence to show that the mortgage is void. At best, his evidence shows that the mortgage was assigned without the assignment being registered; but a mortgage can remain valid and enforceable even if its assignment is not registered. See U.S. Nat'l Bank Ass'n v. Ibanez, 941 N.E.2d 40, 52-53 (Mass. 2011). Second, Urbon alleges a violation of 12 C.F.R. § 226.39, which requires mortgage holders to disclose any transfer of the mortgage. But that regulation was not promulgated until November 20, 2009, well after the transfers at issue here, and it is not retroactive. Third, Urbon cites 15 U.S.C. § 1641(d)(2)(B), which allows a plaintiff to recover the total remaining indebtedness on a loan that violates the predatory lending terms of 15 U.S.C. § 1602(bb). Urbon has not presented evidence showing his loan violated the terms of 15 U.S.C. § 1602(bb), however, meaning that 15 U.S.C. § 1641(d)(2)(B) does not apply. Finally, as previously noted, Mass. Gen. Laws ch. 266, § 35A(b) is a criminal statute and does not provide a private right of action. See Loffredo, 689 N.E.2d at 802.

## IV. Conclusion

For the reasons discussed above, Urbon has not presented evidence from which a reasonable jury could find in his favor on any of his claims. Chase's motion for

summary judgment (Docket # 19) is therefore ALLOWED. Judgment shall enter accordingly.

   March 18, 2013                                /s/Rya W. Zobel
        DATE                                          RYA W. ZOBEL
                                                      UNITED STATES DISTRICT JUDGE